UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:16-CV-00513-GNS-RSE

WIRELESS TELECOM COOPERATIVE, INC.
d/b/a THEWIRELESSFREEWAY                                                    PLAINTIFF

v.

LOUISVILLE/JEFFERSON COUNTY
METRO GOVERNMENT                                                            DEFENDANT

# MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant's Motion for Summary Judgment (DN 44). The motion is ripe for adjudication. For the reasons provided below, Defendants' motion is **GRANTED**.

## I.    BACKGROUND

Plaintiff Wireless Telecom Cooperative Inc. is a business known as theWirelessFreeway ("tWF") and was founded Joseph McNealy ("McNealy"). (Pls.' Resp. Def.'s Mot. Summ. J. 1, DN 45 [hereinafter Pl.'s Resp.]). McNealy is an African-American man who sought to provide free basic wireless internet to a predominately African-American portion of Louisville, Kentucky. (Pl.'s Resp. 2). McNealy entered into conversations with Defendant Louisville/Jefferson County Metro Government ("Defendant") around September 2014 and discussed obtaining a loan through the Department of Housing and Urban Development ("HUD") and its Community Development Block Grants Program to fund tWF's endeavors to provide wireless internet to underserved

communities. (Pl.'s Resp. 2). Plaintiff contends that the project was eligible for HUD's Section 108 loan guarantee program, which is administered by HUD to assist projects believed to contribute to the development of low-income neighborhoods. (Pl.'s Resp. 2).

Plaintiff says that Mayor Greg Fischer showed great enthusiasm for tWF and referred the project to then-Deputy Mayor, Sadiqa Reynolds. (Pl.'s Resp. 2). From there, McNealy and members of the metro government's administration had email conversations over the course of two years. They allegedly assured McNealy that the metro government would assist with financing and encouraged him to make tWF his full-time job. (Pl.'s Resp. 2-3). McNealy also obtained input from professionals and consultants at various telecommunications companies. (Pl.'s Resp. 3). tWF made significant process by launching a wi-fi hotspot with support from a member of the Louisville Metro Council and overseen by the metro government's technology department. (Pl.'s Resp. 3). Plaintiff credits this success to McNealy's acquired expertise and personal professional network. (Pl.'s Resp. 3).

In September 2016, it became clear that Defendant would not proceed with the project. (Pl.'s Resp. 3). Instead, Defendant decided to support the Louisville Food Port, a group which is described by Plaintiff as "mostly white," by "generously provid[ing] [metro government] resources to clear the way for the project." (Pl.'s Resp. 3). Plaintiff alleges this involved a land grant and hours of metro government employee time researching financing through a HUD Section 108 loan. (Pl.'s Resp. 3). Ultimately, no HUD money was available to fund either project. (Pl.'s Resp. 4). Despite this, Plaintiff argues that "[t]he comparison in the treatment [between it and the Louisville Food Port] is shocking. A prestigious, white group was given comparatively instant access to financing, [while] the working-class black-owned business wasn't even afforded fair dealing after being in negotiations for over two years and [after] laying substantial ground work."

(Pl.'s Resp. 4). As a result of this, McNealy and tWF together brought claims under 42 U.S.C. §§ 1981 and 1983. (Compl. ¶ 15). McNealy was subsequently dismissed as a party to this action on August 30, 2017 for lacking standing. (Order 3, DN 23).

In its present motion, Defendant argues that there is no evidence a contract existed between itself and tWF, and there is no evidence of discrimination. (Def.'s Mem. Supp. Mot. Summ. J. 5, DN 44-1 [hereinafter Def.'s Mem.]). Defendant argues this dooms Plaintiff's Section 1981 claim. (Def.'s Mem. 6). Regarding Plaintiff's Section 1983 claim, Defendants contend it must fail because there is no evidence supporting any due process violations in its relationship with McNealy and tWF. (Def.'s Mem. 6).

## II. **JURISDICTION**

The Court has subject-matter jurisdiction over this matter based upon federal question jurisdiction. *See* 28 U.S.C. § 1331.

## III. **STANDARD OF REVIEW**

Before the Court may grant a motion for summary judgment, it must find that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of specifying the basis for its motion and identifying that portion of the record that demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

The Court does not weigh the evidence and all reasonable inferences that may be drawn from the facts placed before the Court must be drawn in favor of the opposing party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In addition, the non-

3

moving party must do more than merely show that there is some "metaphysical doubt as to the material facts." *Id.* at 586. Instead, the Federal Rules of Civil Procedure require the non-moving party to present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute . . . ." Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252.

## IV. DISCUSSION

### A. Section 1981

Plaintiff asserts a claim under 42 U.S.C. § 1981, which provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens . . . ." 42 U.S.C. § 1981(a). The phrase "make and enforce contracts" is defined broadly to include "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." *Id.* § 1981(b). The Sixth Circuit has held, however, that "the express cause of action for damages created by § 1983 constitutes the exclusive federal remedy for violation of the rights guaranteed in § 1981 by state governmental units, [so] no independent cause of action against municipalities is created by § 1981(c)." *Arendale v. City of Memphis*, 519 F.3d 587, 598-99 (6th Cir. 2008) (citing *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 733 (1989)). Because Plaintiff brings its claims against Louisville/Jefferson County Metro Government, its claims against them for depriving it of its constitutional rights cannot be brought

4

under Section 1981. *See id*. Accordingly, Plaintiff's claim under 42 U.S.C. § 1981 will be dismissed.

B. <u>Section 1983</u>

Although Defendants do not make the argument, the Court first notes that "[s]ince corporations, both public and private, are not 'citizens' within the meaning of the Fourteenth Amendment . . . they can never assert the denial of privileges and immunities under [S]ection 1983". *S. Macomb Disposal Auth. v. Wash. Tp.*, 790 F.2d 500, 503-04 (6th Cir. 1986) (citing *Hague v. Comm. For Indus. Org.*, 307 U.S. 496, 514 (1939). Because Plaintiff is a corporation bringing suit under Section 1983, this alone would be sufficient to dismiss its claims for lacking standing. *See id*.

Nevertheless, Plaintiff's claims must fail because it has failed to provide evidence satisfying the three-pronged test required to demonstrate liability against a municipal entity. For Plaintiff to demonstrate municipal liability under Section 1983 it must: "(1) identify the municipal policy or custom, (2) connect the policy to the municipality, and (3) show that his particular injury was incurred due to execution of that policy." *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003) (citing *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993)). Further elaborating on what amounts to a "policy" for purposes of § 1983 claims, the Supreme Court has held that, "[m]unicipal liability under § 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483-84 (1986) (citation omitted). The policy or custom "must be 'the moving force of the constitutional violation' in order to establish the liability of a government

5

body under § 1983." *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994) (quoting *Polk Cty. v. Dodson*, 454 U.S. 312, 326 (1981)).

The closest allegation Plaintiff makes regarding any policy is the claim that Defendant "violated [its] own policies and procedures after first negotiating with Plaintiff[] then arbitrarily reneging, and subsequently allowing and giving Seed Capital, Kentucky, Inc. [("Seed Capital")] complete consideration of the monies tWF had applied for." (Compl. ¶ 22). The email exchanges between McNealy and Louisville/Jefferson County Metro Government officials Plaintiff attaches do nothing to suggest the existence of a policy, racial animus, or Defendant's favoring of Seed Capital because of the race of its constituents. (Pl.'s Resp. Def.'s Mot. Summ. J. Ex. 6, DN 45-6).

Plaintiff does not allege—let alone provide evidence supporting—the existence of a policy under which it was injured. Without more, Plaintiff's claim must fail because it neither identifies a policy or custom under which Defendant operated to deny it funding based on race; nor does it provide any evidence that officials vested with the power to make grant distribution policy followed a specific course of action among various alternatives in denying Plaintiff funds. *See Pembaur*, 475 U.S. at 483-84. Moreover, even granting that Plaintiff's vague references to Defendant's violation of its "own policies and procedures" establishes a policy for purposes of the first prong, that Plaintiff allegedly suffered as a result of Defendant's *violation* of these policies and procedures dooms the claim for the additional reason that Plaintiff's "particular injury was [not] incurred due to execution of that policy." *Alkire*, 330 F.3d at 815 (citation omitted). For these reasons, Plaintiff's claim under 42 U.S.C. § 1983 must also be dismissed.

## V. CONCLUSION

For the reasons provided above, **IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment (DN 44) is **GRANTED**, and the Complaint is **DISMISSED WITH PREJUDICE**.

Greg N. Stivers, Chief Judge
United States District Court

June 3, 2019

cc: counsel of record